IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 24-cv-00185-RMR-SBP

KENNETH MOTT,
Individually and on behalf of all others similarly situated,

    Plaintiff,

v.

TSD Telecom Service LLC,

    Defendant.

---

**ORDER GRANTING PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

---

This case is before the Court on Plaintiff's Motion for Conditional Certification and Court-Authorized Notice under 29 U.S.C. § 216(b), of the Fair Labor Standards Act ("FLSA"), ECF No. 25. Defendants filed a response in opposition, ECF No. 37, and Plaintiff filed a reply, ECF No. 38. For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART.

### I.     BACKGROUND

Plaintiff brings this lawsuit on behalf of himself and other alleged similarly situated employees of Defendant pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et

seq. ("FLSA").[1] Plaintiff alleges that he and those similarly situated were improperly classified as exempt under the FLSA by Defendant TDS Telecom Service LLC ("TDS") and unlawfully denied overtime compensation.

TDS provides broadband, video, and voice communications services to residential, commercial, and wholesale customers. ECF No. 1 ¶ 15. According to Plaintiff, those employed by TDS as "Network Specialists" all perform similar duties, despite variation in their specific job titles. *Id.* ¶ 22-36. Under the umbrella of Network Specialists, Plaintiff includes all those who worked for Defendant as "Network Specialist – OSP Engineering & Construction, Outside Plant Engineering Specialist," and/or "Outside Plant Construction Specialist, including Network Specialists, Network Specialists I, Network Specialists II, or Senior Network Specialists, or in other job titles performing similar duties anywhere in the United States." *Id.* ¶ 36. Plaintiff alleges that a "Network Specialist's primary job duty is to act as the primary liaison between [TDS] (including engineering and construction) and its contracted vendors." *Id.* ¶ 23. Among other tasks, Network Specialists "spent their time communicating with [TDS]'s contracted vendors and construction companies regarding project design plans, entering project design data into a program for cost auto-calculation, obtaining the necessary permits for construction, and submitting project plans to managers and Defendants' oversight board for approval." *Id.* ¶ 24. Plaintiff alleges that

---

[1] Plaintiff also brings claims to recover unpaid wages under the Colorado Overtime and Minimum Pay Standards Order (the "COMPS Order"), The Colorado Wage Claim Act, §8-4- 101, et seq. (the "Wage Claim Act"), and the Colorado Minimum Wage Act, C.R.S. §8-6-101 ("the Minimum Wage Act"), et seq. Plaintiff brings these state law claims as a putative class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. These claims are not at issue here.

he and the other similarly situated individuals were misclassified and routinely worked in excess of forty hours in a workweek without receiving overtime compensation for their overtime hours worked. *Id.* ¶ 39. Plaintiff alleges this was a willful violation of the FLSA. *Id.* ¶ 40.

Accordingly, Plaintiff asks the Court to (1) conditionally certify this case as a nationwide FLSA collective action pursuant to 29 U.S.C. § 216(b); (2) approve Plaintiff's proposed notices and authorize counsel to send initial notice by mail, email and text message, with a reminder email 30 days before the close of the 60-day notice period (Movant's Appx. pp. 41–54); and (3) order Defendants to produce an electronic file with contact information for all Network Specialists employed since January 22, 2021. ECF No. 25. The Magistrate Judge then authorized the parties to engage in a first phase of discovery prior to resolution of the motion. ECF No. 34. After completing that phase of discovery, TDS filed its response in opposition, ECF No. 37, and Plaintiff filed a reply, ECF No. 38.

## II.   LEGAL STANDARD

The FLSA sets out required standards governing the payment of minimum and overtime wages to employees. 29 U.S.C. §§ 206, 207. The FLSA generally requires covered employers to compensate employees for work in excess of forty hours in a work week. *See* 29 U.S.C. § 207(a). Section 216(b) of the FLSA authorizes private individuals to recover damages for violations of overtime provisions. It provides in relevant part that "[a]n action to recover the liability [for unpaid overtime compensation, retaliation and

liquidated damages] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA thus provides plaintiffs the opportunity to proceed collectively, which allows "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (interpreting the ADEA, which explicitly incorporates the collective action provisions of the FLSA). Plaintiffs who wish to participate in an FLSA collective action must opt in to the action. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Whether employees are "similarly situated" is judged in two stages: a preliminary or "notice stage" (at issue here) and then a more searching, substantive stage, usually after the close of discovery. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03, 1105 (10th Cir. 2001). At the first stage, a district court determines whether the plaintiffs are similarly situated for purposes of sending notice to putative class members. *Id*. Courts use a lenient standard at this first stage, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id*. at 1102 (citation omitted). At the second stage, which occurs after discovery, the district court again evaluates whether the putative class members are similarly situated. *See id.* at 1102–03. Courts employ a stricter standard at this second stage,

which requires consideration of several factors, including (1) the disparate factual and employment settings of the individual plaintiffs; (2) various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Id.* at 1103–05.

During the initial notice stage, the standard for conditional certification is lenient and "typically results in class certification." *Ward v. Express Messenger Sys., Inc.*, No. 17-cv-02005-NYW, 2018 WL 1604622, at *3 (D. Colo. Apr. 3, 2018) (quotation omitted). But conditional certification is not "automatic." *Eagle v. Freeport-McMoran, Inc.*, No. 2:15-cv-00577-MV-SMV, 2016 WL 7494278, at *2 (D.N.M. Aug. 3, 2016). Plaintiffs' burden to show they are similarly situated "cannot be satisfied simply by unsupported assertions." *Ward*, 2018 WL 1604622, at *3 (quoting *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016)). A court may deny conditional certification where the complaint is wholly conclusory in nature, the supporting affidavit relies on hearsay from unidentified sources, and the nature of the violation is rendered ambiguous by the particular circumstances of only the named plaintiff. *Id.* (citation omitted).

To assess whether a plaintiff has offered "substantial allegations" that merit certification, the court may rely on the allegations in the complaint and any supporting affidavits filed by the plaintiff. *Nelson v. FedEx Ground Package Sys., Inc.*, No. 18-cv-01378-RM-NYW, 2018 WL 6715897 (D. Colo. Dec. 21, 2018), *report and recommendation adopted*, 2019 WL 1437765 (D. Colo. Feb. 8, 2019). If early discovery has been conducted, the court may also consider that evidence. *See Bowling v. DaVita*,

*Inc.*, 2023 WL 4364140, No. 21-cv-03033-NYW-KLM, at *3 (D. Colo. July 6, 2023) (citation omitted). However, at the notice stage, a court does not "weigh evidence, resolve factual disputes, or rule on the merits of the plaintiffs' claims." *McMahon v. Breckenridge Grant Vacations*, LLC, No. 20-cv-00754-CMA-STV, 2021 WL 4170462, at *2 (D. Colo. Sept. 14, 2021) (quotation omitted).

### III. DISCUSSION

#### A. Conditional Collective Certification

The parties disagree as to whether Plaintiff substantially alleges that the potential opt-in plaintiffs are similarly situated. Plaintiff contends that he is similarly situated to the other potential opt-in plaintiffs due to the nature of the work performed by Network Specialists and the common application of TDS's policy, which he alleges misclassified Network Specialists as exempt and failed to pay overtime. ECF No. 25 at 10-13. Thus, Plaintiff asks the Court to conditionally certify the following:

> All persons who worked for Defendants as a Network Specialist (also referred to as Network Specialist – OSP Engineering & Construction, Outside Plant Engineering Specialist, and/or Outside Plant Construction Specialist) (including Network Specialists, Network Specialists I, Network Specialists II, or Senior Network Specialists), or in other job titles performing similar duties anywhere in the United States any time since three years prior to the filing of this Complaint through the present.

ECF No. 25 at 2-3. In opposing Plaintiff's motion, Defendant argues the potential opt-in plaintiffs are not similarly situated and are not subject to a single decision, plan, or policy.

To determine whether conditional certification is appropriate, the Court considers the Complaint's allegations, the declarations provided by both parties, and the early

discovery that has been conducted thus far. At this lenient notice stage, the Court concludes that Plaintiff has met his burden of showing that the potential opt-in plaintiffs are similarly situated for purposes of conditional class certification.

In support of its argument that Network Specialists are similarly situated, Plaintiff alleges: Network Specialists routinely worked more than forty hours per week; Network Specialists (despite having different seniority levels, different geographic areas, different team assignments) all facilitate the planning, construction, and activation of the telecommunication projects that form the core of TDS's business and perform the necessary steps for TDS to sell fiber connections to its customers; Network Specialists do not advise TDS's customers, determine the scope of the project, or have authority over what projects are ultimately implemented; Network Specialists are not primarily supervisors and do not hire or fire other employees; Network Specialists do not determine what projects they are assigned to or have authority over the timelines of those projects; and Network Specialists perform similar duties regardless of seniority level; and that TDS's policy misclassified Network Specialists as "exempt" to avoid paying overtime. *See* ECF No. 25 at 4-7; ECF No. 1 ¶¶ 22-26; 30, 34, 40, 56. Beyond these allegations, Plaintiff has attached the declarations of eight other Network Specialists, reflecting a range of seniority levels, geographic areas, and internal teams, who state they have not received overtime compensation despite working more than forty hours in a week. See ECF No. 25-1 at 6, 10, 13, 18, 22, 26-27, 31, 35-36, 40. Plaintiff also references documents produced in early discovery, wherein TDS acknowledged that it was "review[ing] Network

Specialist roles across the organization" in an effort to ensure compliance with Department of Labor standards "in terms of employee exemption status and eligibility for overtime compensation." ECF No. 38-1 at 28.

In its response, TDS concedes that it "uses generic and fairly uniform job descriptions for its Network Specialist positions," but asserts that "[i]n practice . . . each Network Specialist position entails unique duties given the difference in business units as well as functional areas . . . ." ECF No. 37 at 5. Specifically, TDS asserts that "Plaintiff's putative collective encompasses at least seven job titles, three business units, six functional areas and individuals who performed materially different job duties depending on job title, business unit and/or functional area." *Id.* at 10. TDS challenges several assertions made by Plaintiff as demonstrably false. First, TDS disputes that Network Specialists perform similar duties regardless of seniority level, contending that the allegation ignores the distinct job duties of many Network Specialists, including those who directly supervise multiple other TDS personnel. ECF No. 37 at 10. Next, TDS argues that Network Specialists advise customers and regulate the scope of projects, despite Plaintiff's assertion that they do not. *Id.* at 10-11. Finally, TDS asserts that Network Specialists exercise control of their projects, including with respect to timeline and budget. *Id.* at 11. Further, TDS contends that Network Specialists were not subject to a single decision, plan, or policy. TDS asserts that some Network Specialists qualify for executive and/or combination exemptions; some Network Specialists qualify for the computer professional exemption; and approximately 15% of Network Specialists fall into the highly

compensated employee category, which solidifies their exempt status. *Id.* at 11-17. Given these purported differences in job duties, TDS maintains that Plaintiff's putative class is not similarly situated. In the alternative, TDS contends that "if the Court decides to grant conditional certification, the collective should be limited to employees who have held a Network Specialist position in the Network Construction functional area of the Network Services business unit . . . ." *Id.* at 17.

As discussed above, at this initial notice stage, Plaintiff need only assert "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. Here, Plaintiff's allegations are "sufficient to establish at this early stage that there may be other similarly-situated putative collective action plaintiffs who were affected by a single decision, policy, or plan." *Esparsen v. Ridley's Fam. Markets, Inc.*, No. 18-CV-01556-RM-GPG, 2020 WL 9424291, at *3 (D. Colo. Feb. 21, 2020), *report and recommendation adopted*, No. 1:18-CV-01556-RM-GPG, 2020 WL 9424246 (D. Colo. Mar. 13, 2020). TDS's arguments against certification—which relate to the different factual and employment settings, various defenses available as to individual plaintiffs, and fairness—are better suited for the stricter standard employed at the second stage of the inquiry into whether the employees are similarly situated. *See Thiessen*, 267 F.3d at 1102 (Courts employ a stricter standard at the second stage, which requires consideration of several factors, including (1) the disparate factual and employment settings of the individual plaintiffs; (2) various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness

and procedural considerations.); *see also Peterson v. Nelnet Diversified Sols., LLC*, No. 17-CV-01064-NYW, 2018 WL 3470604, at *7 (D. Colo. Apr. 25, 2018) ("It is not necessary at this step in the process, 'to consider the exact factual setting of the policy−for example, the coworkers involved, the managers involved, the number of hours worked overtime, and the exact implementation of the unwritten policy.'") (quoting *McGlon v. Sprint Corporation*, No. 16-CV-2099-JAR, 2016 WL 7103949, at *5 (D. Kan. Dec. 6, 2016)); *Bass v. PJComn Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2010 WL 3720217, at *2 (D. Colo. Sept. 15, 2010) ("Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members") (citation omitted).

Accordingly, under the lenient standard imposed at this stage, the Court finds that Plaintiff has substantially alleged a policy, or at least a practice, with respect to misclassifying Network Specialists as exempt. *See McGlon*, 2016 WL 7103949 at *5 ("Plaintiff has set forth substantial allegations that the putative class members were together the victims of a single decision, policy or plan to require reporting of only forty hours of work despite hours worked in excess. The court requires nothing more.") (internal quotations omitted). Therefore, the Court will conditionally certify the collective.

### B. Notice

As previously noted, similarly situated employees in an FLSA collective action must affirmatively opt into the litigation. Upon granting conditional certification of an FLSA collective action, a plaintiff may disseminate notice and consent forms to putative plaintiffs, informing them of the litigation and giving instructions for how to join in the

action. *See Hoffman La-Roche*, 493 U.S. at 170. Under the FLSA, the court must ensure that the notice to potential opt-in plaintiffs is fair and accurate. *See id.*; *Avendano v. Averus, Inc.*, No. 14-cv-01614-CMA-MJW, 2015 WL 1529354, at *10 (D. Colo. 2015).

Plaintiff has submitted a Proposed Notice to be sent to members of the potential collective by mail, email, and text message. ECF No. 25-1 at 41-51. Plaintiff also requests that within ten days of the Court's Order, TDS provide a list of all persons who have worked as Network Specialists since January 22, 2021, including everyone's "name, job title, last known address and telephone number, last known personal email address, dates of employment, location(s) of employment, employee identification number, and last four digits of social security numbers." ECF No. 25 at 15. Finally, Plaintiff requests that he be permitted to circulate a reminder via email 30 days into the notice period. *Id.* at 14. TDS argues the Proposed Notice and Plaintiff's requests are improper for several reasons, which the Court addresses below.

First, TDS argues Plaintiff should not be allowed to send a thirty-day reminder. Plaintiff generally argues that a reminder is appropriate to help ensure that all persons actually receive the relevant information. *See* ECF No. 25 at 14. However, "because the Court is already permitting notice through three separate channels, the Court declines to permit a reminder notice at this juncture." *Bowling v. DaVita, Inc.*, No. 21-CV-03033-NYW-KLM, 2023 WL 4364140, at *10 (D. Colo. July 6, 2023). *See also Kibler v. Kroger Cos.*, No. 21-cv-00509-PAB-KMT, 2022 WL 268056, at *8 (D. Colo. Jan. 28, 2022) (declining to permit a reminder notice where the plaintiff failed to explain why a reminder was

11

necessary); *Foster v. Nova Hardbanding, LLC*, No. CV 15-1047 CG/LAM, 2016 WL 4492829, at *7 (D.N.M. Apr. 20, 2016) (declining to permit a reminder notice where the collective-action members would be receiving notice via mail and email).

Second, TDS raises the following disputes as to the Proposed Notice: (1) the Proposed Notice improperly informs potential plaintiffs that if they opt in, they will be represented by Plaintiff's attorneys, where it must inform putative plaintiffs that they may join the action and still obtain independent representation or proceed *pro se*; (2) the Proposed Notice fails to inform putative plaintiffs of their right to not be bound by any proposed settlement, even if they opt in; (3) the Proposed Notice fails to inform putative class members that they may be required to participate in the discovery process if they opt in; and (4) the Proposed Notice must be amended to include advisement that Plaintiffs could be responsible for TDS's costs. The Court concludes that the Proposed Notice inaccurately suggests that opt-in plaintiffs are "choosing to be represented by Plaintiff's attorneys in the lawsuit" and fails to inform them that they have a right not to be bound by a settlement that the original Plaintiff advocates. *See* ECF No. 25-1 at 49. Therefore, the Proposed Notice must be modified to inform the potential plaintiffs that they may choose to either be represented by Plaintiff's counsel, to obtain independent representation, or to proceed *pro se*, and that of their right not to be bound by Plaintiff's settlement. *See Pena v. Home Care of Denver, LLC*, No. 19-CV-00069-CMA-NYW, 2019 WL 5577947, at *2 (D. Colo. Oct. 29, 2019) (requiring that Proposed Notice be modified to include the "requisite information" that potential plaintiffs may "choose either to be represented by

Plaintiff's counsel, to obtain independent representation, or to participate pro se" and "the right not to be bound by a settlement that the original plaintiff advocates."). The Court will not require the inclusion of information related to potential costs, as it "could discourage putative members from joining the litigation and would run contrary to the FLSA's remedial purposes." *Levine v. Vitamin Cottage Nat. Food Markets Inc.*, No. 20-CV-261-STV, 2020 WL 6546734, at *5 (D. Colo. Nov. 6, 2020) (noting chilling effect of such language include in proposed notice). However, the Court will require the Notice to inform putative class members "they may be required to participate in discovery if they opt in." *Id.* (citing *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629(KPF), 2013 WL 5211839, at * 7 (S.D.N.Y. Sept. 16, 2013) (finding that the advantages of providing a neutral explanation of opt-in plaintiffs discovery obligations outweighs the possibility of dissuading potential plaintiffs)).

Third, TDS argues it will need thirty days, not ten days, to provide the contact information and objects to providing the social security number of the putative collective. The Court will order that the parties provide the contact information within fourteen (14) days, and that such information shall not disclose the Network Specialists' social security numbers. *See, e.g.*, *Bryant v. Act Fast Delivery of Colorado, Inc.*, No. 14-CV-00870-MSK-NYW, 2015 WL 3929663, at *4 (D. Colo. June 25, 2015) (ordering that Defendant disclose to Plaintiffs contact information of potential opt-ins, but shall not disclose personal information, such as social security numbers); *Esparsen v. Ridley's Fam. Markets, Inc.*, No. 18-CV-01556-RM-GPG, 2020 WL 9424291, at *5 (D. Colo. Feb. 21, 2020), *report*

*and recommendation adopted*, No. 1:18-CV-01556-RM-GPG, 2020 WL 9424246 (D. Colo. Mar. 13, 2020) (same); *Beltran v. InterExchange, Inc.*, No. 14-CV-03074-CMA-CBS, 2017 WL 4418684, at *5 (D. Colo. Apr. 28, 2017) (same).

Finally, Defendant argues "because Plaintiff has not come forward with any evidence of a willful violation to support his conclusory assertion that TDS's FLSA violation was willful, notice should be sent only to Network Specialists employed by TDS at any time the two years prior to the date of the Court's Order, to the present." ECF No. 37 at 21. Under the FLSA, an employee must commence an action within two years of the claim's accrual or within three years if the cause of action arises out of a willful violation. *See* 29 U.S.C. § 255. Here, Plaintiff has alleged a willful violation. *See* ECF No. 1 ¶ 21 ("At all times relevant herein, Defendants operated a willful scheme to deprive Plaintiff and others similarly situated of overtime compensation."); ¶ 40 ("Defendants willfully engaged in a pattern of violating the FLSA, as described in this Complaint in ways including, but not limited to, requiring Plaintiff and the other similarly situated individuals to work excessive hours and failing to pay them overtime compensation."); ¶ 56 ("The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Defendants knew or showed reckless disregard for the fact that its compensation practices were in violation of these laws."). These allegations are sufficient, at this stage, to allege willfulness and the Proposed Notice shall extend three years back. *See Stallings v. Antero Res. Corp.,* No. 1:17-CV-01939-RM-NYW, 2018 WL 1250610, at *7 (D. Colo. Mar. 12, 2018), *report and recommendation adopted*, No.

17-CV-01939-RM-NYW, 2018 WL 2561046 (D. Colo. Apr. 16, 2018) (allegation that Defendant "knowingly, willfully, or in reckless disregard carried out [an] illegal pattern or practice of failing to pay the Putative Class Members overtime compensation" sufficient to allege willfulness as required to extend the proposed notice to three years back); *Peterson v. Nelnet Diversified Sols., LLC*, No. 17-CV-01064-NYW, 2018 WL 3470604, at *11 (D. Colo. Apr. 25, 2018) (same).

In light of the foregoing, the Court orders the parties to meet and confer, no later than fourteen days from the date of this Order, about amendments to Plaintiff's Proposed Notice in compliance with the guidance stated herein. On or before that date, Plaintiff shall file a renewed motion seeking approval of the notice and consent form. The parties shall use their best efforts to mutually agree on a proposed notice and consent form, consistent with the rulings herein, and the parties are expressly advised that the Court will not entertain arguments already raised by the parties and addressed by the Court in this Order. In the event that the parties cannot arrive at a mutually acceptable draft, they shall submit a single proposed notice and/or consent form, indicating the language in the notice on which they agree and the language on which they cannot agree, as well as the content they each propose. Only after the Court approves the amended notice will the Court permit counsel to send notice to Proposed Collective members.

### IV.   CONCLUSION

For these reasons, it is ORDERED that:

(1) Plaintiff's Motion for Conditional Certification and Distribution of Court-Authorized Notice, ECF No. 25, is GRANTED IN PART as to allow for conditional certification of a collective action and DENIED IN PART as to the Proposed Notice;

(2) No later than fourteen (14) days from the date of this Order, the parties shall meet and confer and file a Motion to Approve Notice and Consent to Join Form or other documents, as contemplated above.

DATED:  March 4, 2025

BY THE COURT:

REGINA M. RODRIGUEZ
United States District Judge